FILED'07 APR 12 11:20 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    06-CR-247-BR

        Plaintiff,                        OPINION AND ORDER

v.

DOUGLAS WAYNE GAMBLE,

        Defendant.

**KARIN J. IMMERGUT**
United States Attorney
**DWIGHT C. HOLTON**
Assistant United States Attorney
1000 S.W. Third St., Suite 600
Portland, OR 97204
(503) 727-1000

        Attorneys for Plaintiff

**STEVEN T. WAX**
Federal Public Defender
**ELLEN C. PITCHER**
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR  97204
(503) 326-2123

        Attorneys for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the issue of Defendant Douglas Wayne Gamble's restitution. For the reasons that follow, the Court orders Gamble to pay restitution as follows:

| | |
|---|---|
| David Schaefer - | $256,270.48 |
| Priority One Financial - | $291,352.99 |
| First Tech Credit Union - | $ 5,000.00 |
| CUMIS Insurance Society - | $167,000.00 |
| GE Commercial Finance - | To be determined. |

## BACKGROUND

In November 2004, Defendant David Gamble launched a business to sell recreational vehicles with a partner, David Schaefer. The business, Performance RV (PRV), became short of funds almost immediately. To obtain money for the business and for his personal use, Defendant devised a scheme to defraud a loan broker, lenders, and Schaefer out of hundreds of thousands of dollars. Specifically, Defendant obtained loans from several lenders in the names of other people without their consent by forging the signatures of the "borrowers" and by using the same collateral for multiple loans. Defendant, among other things, faxed a fraudulent application for a loan in the amount of $172,000 in Schaefer's name to Priority One Financial. On June 9, 2006, the government filed an Information in which it

2 - OPINION AND ORDER

...
...

charged Defendant with Wire Fraud for submitting the fraudulent loan application in Schaefer's name to Priority One Financial.

Following his arraignment on June 27, 2006, Defendant pled guilty to one count of Wire Fraud for violating 18 U.S.C. § 1343 by submitting the fraudulent loan application in Schaefer's name to Priority One Financial. During the plea colloquy and pursuant to the Plea Agreement, Defendant agreed to pay restitution to various lenders for the total amount of their loss. Defendant also agreed to pay restitution to Schaefer for "any costs associated with the start-up of [PRV] regardless whether this amount is legally considered a loss attributable to [Defendant's] criminal conduct." The parties did not address restitution to PRV in the Plea Agreement nor during the plea colloquy.

In preparation for sentencing, the parties exchanged letters and information regarding restitution theories. On January 25, 2007, PRV submitted a Statement of Restitution in which it requested restitution totaling over $350,000 for both the corporation and for unpaid creditors of the corporation.

On February 20, 2007, the government filed its Sentencing Memorandum in which it recommended the Court require Defendant to pay at least $546,393.19 in restitution to Priority One Financial, First Tech Credit Union, CUMIS Insurance Society, and GE Commercial Finance Corporation for defaulted loans and $246,678.62 in restitution to David Schaefer for his initial

3 - OPINION AND ORDER

stock purchase, working capital loan, bridge loan, and bond payment. The government also recommended the Court require Defendant to pay six months of lost income to Schaefer based on Schaefer's income from his employment before becoming involved in PRV. Finally, the government recommended Defendant be required to pay restitution to Schaefer in the amount of $24,878.90 for attorneys' fees incurred by Schaefer in dealing "with the sprawling mess left by [Defendant's] fraud."

On February 22, 2007, Defendant filed a Memorandum Regarding Restitution Issues in which he asserted PRV's claim for restitution totaling over $350,000 is not supported by the law or by the facts of the case, Schaefer's claim for lost income is too speculative, and Schaefer's request for attorneys' fees should be denied.

On February 23, 2007, the Court held a sentencing hearing at which the government asserted Defendant owed the following restitution to lenders: Priority One Financial, $291,352.99; First Tech Credit Union, $5,000; and CUMIS Insurance Society $167,000. Defendant acknowledged he agreed to pay these amounts as restitution to the lenders. The government also asserted the restitution owed by Defendant to GE Commercial Finance Corporation was still undetermined due to an offset of inventory that remained uncertain. In addition, the parties agreed Defendant owed Schaefer restitution as follows: $25,000 for an

4 - OPINION AND ORDER

initial stock purchase, $100,000 for a working capital loan, $45,000 for a bridge loan, and $35,000 for a bond payment. The government asserted Defendant also should be ordered to pay restitution to Schaefer in the amount of $82,287.25 for lost income for six months based on Schaefer's average earnings in the two preceding years. Finally, the government asserted Defendant should be ordered to pay restitution to Schaefer in the amount of $23,841.40 plus interest for attorneys' fees incurred by Schaefer to straighten out his finances and to deal with creditors. Defendant, however, disputed the government's request for Schaefer's lost earnings on the ground that the amount was too speculative, and Defendant disagreed with the government that the Court should order Defendant to pay Schaefer's attorneys' fees.

At the hearing, PRV contended the Court should order Defendant to pay $267,304.26 excluding interest in restitution to PRV for various employee salaries, tax withholdings, and other debts that it contends resulted directly from Defendant's fraudulent activity. The government did not take any position on PRV's request. Defendant objected to PRV's request on the ground that PRV's claimed losses did not flow directly and proximately from the fraud to which Defendant pled guilty.

The Court sentenced Defendant to a term of imprisonment of 33 months followed by three years of supervised release. The Court advised the parties that a written opinion addressing

restitution would follow.

## DISCUSSION

Defendant asserts PRV's request for restitution is not supported by the law or the facts of this case, Schaefer's claim for lost income is too speculative, and Schaefer's request for attorneys' fees should be denied.

**I.   Restitution Generally**

The Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A, provides for the payment of restitution to crime victims:

> (a)(1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense.
>
> (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.
>
> (3) The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.

18 U.S.C. § 3664(e) establishes each party's burden of proof as follows:

> Any dispute as to the proper amount or type

6 - OPINION AND ORDER

>     of restitution shall be resolved by the court by
>     the preponderance of the evidence.  The burden of
>     demonstrating the amount of the loss sustained by
>     a victim as a result of the offense shall be on
>     the attorney for the Government.  The burden of
>     demonstrating the financial resources of the
>     defendant and the financial needs of the
>     defendant's dependents, shall be on the defendant.
>     The burden of demonstrating such other matters as
>     the court deems appropriate shall be upon the
>     party designated by the court as justice requires.

## II. Restitution to PRV

### A. The Court May Consider PRV's Statement of Restitution

In *United States v. Gamma Tech Industries, Inc.*, the Ninth Circuit held a corporate victim harmed by the defendant's fraud may present evidence as to whether the court should order restitution and as to the amount of restitution.  265 F.3d 917, 923-24 (9th Cir. 2001).  Thus, the Ninth Circuit found the district court did not err when it admitted the corporation's evidence.  The court also noted the district court's decision was "in keeping with the court's duty to set a sentence that is 'sufficient, but not greater than necessary' to achieve the purposes of sentencing."  *Id.* at 924 (quoting 18 U.S.C. § 3553(a)).  In addition, the Ninth Circuit found "the district court has virtually unfettered discretion to allow affected individuals to present information to the court" and "doubt[ed] the district court could *ever* abuse its discretion by accepting evidence relevant to a sentencing decision."  *Id.* at 924-25 (emphasis in original).  The Ninth Circuit also found "the

7 - OPINION AND ORDER

district court was bound to conduct a full and fair hearing on the issue of restitution" after it decided to allow the corporate victim to present evidence of damages. *Id.* at 925 (citing *United States v. Najjor*, 255 F.3d 979, 983-84 (9th Cir. 2001)).

Accordingly, the Court concludes it may consider PRV's evidence and testimony with respect to the issue of restitution and finds such evidence is relevant to the Court's sentencing decision.

    **B.  PRV Has Not Established It Was "Directly and Proximately Harmed" by Defendant's Conduct.**

As noted, § 3663A defines a victim for purposes of the MVRA as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including." The Court may only compensate a victim for "actual losses caused [directly] by the defendant's criminal conduct." *Gamma Tech Indus.*, 265 F.3d at 926 (citing *United States v. Rodrigues*, 229 F.3d 842, 845 (9th Cir. 2000)). Losses that result from an intervening cause or from criminal conduct other than the conduct to which the defendant pled guilty are not "actual losses" for which restitution may be ordered within the meaning of § 3663A. *See, e.g., United States v. Meksian*, 170 F.3d 1260, 1263 (9th Cir. 1999)(rejected mere "but for" standard for proving loss and reversed restitution order in fraudulent loan-application case because an intervening cause for the erroneous issuance of the loan – an inaccurate environmental

8 - OPINION AND ORDER

report - was not directly related to the offense conduct); *United States v. Sablan*, 92 F.3d 865, 870 (9th Cir. 1996)(reversed restitution order based on consequential damages such as expenses arising from meetings with law-enforcement officers investigating the crime because such expenses were not necessary to repair the damage caused by the defendant's criminal conduct); *United States v. Reed*, 80 F.3d 1419, 1421 (9th Cir. 1996)(reversed restitution order based on damage to private vehicles that occurred during flight from police when the offense of conviction was illegal possession of a firearm by a felon); *United States v. Tyler*, 767 F.2d 1350, 1351 (9th Cir. 1985)(rejected restitution award under then 18 U.S.C. § 3651 because losses based on depressed market prices were "too remote").

The Ninth Circuit, however, has also approved restitution awards that included losses one step removed from the "offense conduct" itself. *See, e.g., United States v. Rice*, 38 F.3d 1536, 1542 (9th Cir. 1994)(in conspiracy and mail fraud case, upheld restitution based on victim's inability to use entire inventory of parts supplied by the defendant because victim could not identify the parts that were defective); *United States v. Koenig*, 952 F.2d 267, 274-75 (9th Cir. 1991)(in case involving conspiracy to produce and to use counterfeit automated teller-machine cards, upheld restitution for the cost of reprogramming bank computers after the defendants had stolen ATM

9 - OPINION AND ORDER

account information).

Here PRV asserts restitution is necessary because Defendant took money from PRV, and, as a result, PRV did not have enough money to pay its vendors, employees, or taxing authorities. In addition, PRV could not fill orders for customers who had ordered vehicles and put down deposits for them.

Defendant, however, contends PRV was a faltering business that would have disappointed creditors, vendors, employees, taxing authorities, and customers even in the absence of the fraudulent loans. PRV was undercapitalized from the outset and did not make a profit during its first year of operations. Thus, Defendant asserts PRV's financial problems did not flow directly and proximately from the conduct to which Defendant pled guilty.

At the sentencing hearing, David Schaefer; John Gamble; and Deidre Straley, C.P.A., testified. Schaefer reviewed Defendant's fraudulent transactions. Schaefer also provided the Court with a budget that he created in 2007 to represent what he believed PRV's operations for 2005 would have looked like without the fraudulent transactions based on PRV's March through November 16, 2005, information. He also provided the Court with a copy of PRV's 2005 income-tax return. According to Schaefer, PRV would have had a first-year loss of $6,804 based on its sales

and projected expenses for March through November 16, 2005. Schaefer conceded his budget did not include expenses for November 2004 through March 1, 2005, the first four months PRV operated as a start-up business without sales or revenue. Schaefer also reviewed PRV's 2005 income-tax return, which showed a loss of $533,064 for 2005. Schaefer conceded the budget he prepared did not include certain expenses noted on PRV's tax return such as $53,000 for repairs and maintenance and $60,000 for advertising expenses. If these items had been included, the budget would have reflected an even larger projected loss for PRV in 2005. Nevertheless, Schaefer testified he believed PRV would have had sufficient capital to fund both start-up costs and losses for the first year if Defendant had not taken funds from PRV.

John Gamble, Defendant's father, testified he had been a bank examiner for 30 years and had examined the books of thousands of companies during that time. After Defendant confessed his fraudulent behavior to his father, Gamble offered to help Schaefer reconstruct PRV's books. Gamble supervised another PRV employee in putting together PRV's financial information until March 31, 2006. Gamble supervised development of a cash-flow statement for PRV, an operating statement of profit and loss, and a balance sheet for 2005. Gamble testified PRV "was essentially broke, they had no money to operate" by the

11 - OPINION AND ORDER

end of March 2005. Gamble also testified PRV's "bottom line" did not improve from April through November 2005 even when the fraudulent loans acquired through Defendant were included. Gamble opined PRV was undercapitalized from the outset, and a sudden increase in the price of diesel fuel in 2005 "really impacted [PRV's] customer market, being unable to sell units to purchasers."

Deidre Straley testified she reviewed PRV's records, including income statements, general ledgers, and bank statements, and prepared a cash-basis analysis of PRV's income and expenses for November 2004 through November 2005. Straley's cash-based analysis was based only on PRV's operating income and expenses and did not include either the fraudulent loans obtained through Defendant or Schaefer's cash contributions to PRV. Straley concluded PRV was operating at a loss from its inception in November 2004, and PRV had a net cash-basis loss of $368,233 by November 2005. Straley noted this figure differed from the loss reported on PRV's 2005 income-tax return because of accrual items that were due but not paid in 2005 such as $78,000 in payroll taxes. Straley opined Schaefer's budget did not take into consideration PRV's actual expenses and was not an accurate picture of PRV's performance in 2005.

In summary, the evidence convincingly establishes PRV was undercapitalized at its inception. Even if Defendant's

criminal activities are not considered, PRV had expenses that substantially outpaced income for the majority of its first year in business. Thus, the Court concludes it has not been shown that PRV would have been successful in the absence of Defendant's conduct, and, accordingly, it has not been shown that the losses PRV seeks in restitution resulted directly from Defendant's criminal conduct. The Court, therefore, declines to award any restitution to PRV.

### III. Restitution to David Schaefer

Schaefer seeks restitution for some of his PRV start-up costs, lost earnings, and attorneys' fees.

#### A. Start-Up Costs

As noted, in his Plea Agreement and during the plea colloquy, Defendant agreed to pay David Schaefer restitution for his start-up costs in PRV. Accordingly, the Court orders Defendant to pay restitution to David Schaefer for start-up costs as follows:

| | |
|---|---|
| Initial stock purchase - | $ 25,000 |
| Working capital loan - | $100,000 |
| Bridge loan - | $ 45,000 |
| Bond payment - | $ 35,000 |

As the Court noted at the February 23, 2007, hearing, it declines to require Defendant to pay interest on these amounts because it will already be a difficult and extensive process for Defendant

13 - OPINION AND ORDER

to pay all of the restitution required. The Court, therefore, will not exacerbate this difficult process by requiring Defendant to pay interest.

### B.   Schaefer's Lost Earnings

The government asserts Schaefer is entitled to lost earnings for six months in 2005 based on the average monthly earnings Schaefer reported in his 2003 and 2004 tax returns. According to the government, therefore, Schaefer should receive $82,287.25 in restitution for lost income that he likely would have earned for six months in 2005 if he had not been involved in the PRV venture with Defendant.

Defendant, however, contends the government's request for an award of lost earnings to Schaefer is too speculative. Specifically, Defendant argues that most new businesses fail and that PRV in particular would have operated at a loss even if Defendant's removal of funds from the company were disregarded.

18 U.S.C. § 3663A(b) provides in pertinent part:  "The order of restitution shall require that such defendant-- . . . (4) in any case, reimburse the victim for lost income." An award for a victim's lost income, therefore, is mandated by the restitution statute. Although the Court recognizes start-up businesses often fail and PRV appeared to have financial troubles from the outset, § 3663A(b) mandates Schaefer is entitled to some restitution for lost income because he would have continued to

14 - OPINION AND ORDER

earn approximately the same amount as he did in 2003 and 2004 if he had not become involved in the PRV venture with Defendant. The Court also recognizes, however, that Schaefer had a duty to mitigate his lost earnings by finding other employment.

The Court concludes on this record that Defendant should be required to pay Schaefer restitution for lost earnings of $27,429.08 for two months based on his average monthly income of $13,714.54 from 2003 and 2004.

### C. Schaefer's Attorneys' Fees

Schaefer also seeks $23,841.40 plus interest for attorneys' fees incurred to straighten out his finances after the PRV venture, to deal with creditors, and to deal with the FBI investigation of Defendant's fraud.

18 U.S.C. § 3663A(b) provides in pertinent part:

> The order of restitution shall require that such defendant--
>
> (4)  in any case, reimburse the victim for . . . other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

In *United States v. Phillips*, the Ninth Circuit noted it has adopted a "broad view of the restitution authorization." 367 F.3d 846, 863 (9th Cir. 2004). When analyzing an award of restitution, the court must determine "'whether the costs [of investigation] were incurred as a direct result' of the defendant's wrongful conduct." *Id*. (quoting *United States v.*

15 - OPINION AND ORDER

*Cummings*, 281 F.3d 1046, 1052 (9th Cir. 2002)).  The court found "the costs of gathering evidence solely for a criminal investigation are not directly related to the crime" and, therefore, are not properly the subject of a restitution order.  *Id*.  The court further found, however, that costs incurred by a victim "as a direct result of the *offense*, not as a direct result of the criminal prosecution," may be recoverable.  *Id*. (emphasis in original).  Accordingly, the Ninth Circuit held the government was entitled to restitution for the expenses it incurred to investigate the site of the defendant's damage to the environment and to design an appropriate clean-up plan because the government incurred these expenses as a direct result of the defendant's violation of the Clean Water Act rather than as part of the criminal investigation into the defendant's activities.  *Id*.

Similarly in *United States v. Gordon*, the Ninth Circuit held a victim was entitled to restitution for its expenses, including attorneys' fees, incurred to investigate other potential frauds and insider trading perpetrated by the defendant during his employment with the victim because these costs were a direct and foreseeable result of the defendant's fraudulent activities.  393 F.3d 1044, 1057 (9th Cir. 2004).

Here Schaefer engaged the services of an attorney to assist him in determining the extent of the damage to Schaefer's finances and credit that were a direct result of Defendant's

16 - OPINION AND ORDER

fraudulent activities. The attorney assisted Schaefer in developing a plan of action to deal with his financial situation and with creditors. The Court, therefore, concludes these expenses are a direct and foreseeable result of Defendant's offense. Accordingly, the Court orders Defendant to pay attorneys' fees of $23,841.40 to Schaefer as restitution.

In summary, the Court orders Defendant to pay a total of $256,270.48 as restitution. As noted, the Court declines to order Defendant to pay interest on any restitution to Schaefer.

### IV. Restitution to Defendant's Lenders

As noted, in his Plea Agreement and during the plea colloquy, Defendant agreed to pay restitution to Priority One Financial, First Tech Credit Union, CUMIS Insurance Society, and GE Commercial Finance Corporation in the amounts set out by the government.

Accordingly, the Court orders Defendant to pay restitution to his lenders as follows:

| | |
|---|---|
| Priority One Financial - | $291,352.99 |
| First Tech Credit Union - | $ 5,000.00 |
| CUMIS Insurance Society - | $167,000.00 |
| GE Commercial Finance Corp. - | an amount to be determined by July 12, 2007. |

17 - OPINION AND ORDER

**CONCLUSION**

For these reasons, the Court orders Defendant to pay restitution as follows:

| | |
|---|---|
| David Schaefer - | $256,270.48 |
| Priority One Financial - | $291,352.99 |
| First Tech Credit Union - | $  5,000.00 |
| CUMIS Insurance Society - | $167,000.00 |
| GE Commercial Finance - | To be determined. |

The Court also directs the parties to advise the Court of the amount of restitution to be paid to GE Commercial Finance no later than July 12, 2007.

IT IS SO ORDERED.

DATED this 12th day of April, 2007.

_____
ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER